UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| DRAKE ANTHONY DESORMEAUX | * | CIVIL ACTION NO. 11-1549 |
| VERSUS | * | JUDGE HAIK |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Drake Anthony Desormeaux, born October 8, 1975, filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 14, 2009, alleging disability as of June 30, 2005, due to neck and back pain.[1] [2]

---

[1] Claimant had previously filed applications on February 3, 2006, which were denied by Disability Determinations Services on May 27, 2006, and not appealed. The Administrative Law Judge ("ALJ") found that because the May 27, 2006 determination was the final one, claimant could not be found disabled prior to May 27, 2006. (Tr. 12).

[2] Although claimant stated in his disability report that he became unable to work on June 30, 2005, he reported on the same page that he worked until April 3, 2009. (Tr. 15, 116). His monthly earnings between June 30, 2005 and March 31, 2009 exceeded earnings that would be presumptive of engaging in substantial gainful activity ("SGA") (2008 – $20,313.72; 2007 – $24,342.09; 2006 – $5,112.20; 2005 – $19,867.20). Thus, the ALJ found that claimant had engaged in SGA until March 31, 2009, but had not worked at a capacity of SGA from April 1, 2009 to the date of the decision.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled.  However, I recommend that this matter be remanded for further administrative action, based on the following:

**(1) Records from Dr. Joseph Henry Tyler Mental Health Center dated July 23, 2005 to August 16, 2005**.  Claimant presented with suicidal ideation on July 23, 2005.  (Tr. 172).  The assessment was major depressive disorder, single episode, severe without psychotic features; nicotine dependence, and partner relational problems.  (Tr. 168-70).  His Global Assessment of Functioning Score was 90 for the prior year and 80 on discharge.  (Tr. 147).  He was prescribed Prozac and Benadryl.  (Tr. 168).

**(2) Report from Henry Lagarde, Ph.D., dated March 20, 2006**.  Claimant was seen for depression and anxiety.  (Tr. 176).  His affect appeared depressed and anxious.  Capacity for judgment and insight was intact.

Claimant's interview about depression symptomology was significant, including anhedonia and difficulty sleeping.  (Tr. 177).  He was not manifesting suicidal ideation at the time of the evaluation.

Dr. Lagarde's diagnosis was major depressive disorder, single episode. His impression was that claimant would be able to understand, remember, and carry out simple, detailed instructions, and seemed capable of concentration and persistence. He had difficulties regarding social interaction and social adaptation of long-standing nature, for which he was seeking some resolution in therapy.

Claimant did not keep his followup appointment, and therapy was terminated.

**(3) Records from University Medical Center dated November 27, 2007 to February 6, 2010**. On November 27, 2007, claimant presented with a stab wound. (Tr. 193-96). X-rays revealed a hematoma in the lower anterior chest wall/upper abdominal wall left of midline with no evidence of intraperitoneal or mediastinal extension. (Tr. 192). A CT of the thorax was negative. (Tr. 191).

On April 3, 2009, claimant presented with low back pain which radiated down both legs. (Tr. 189). Lumbar spine x-rays showed degenerative changes at L4-5. (Tr. 186). He was prescribed Flexeril, Voltaren, and Ultram. (Tr. 190).

On May 19, 2009, claimant complained of continued pain. (Tr. 184). He reported that the Ultram did not relieve the pain, and the Voltaren made his nose bleed. He also had knee pain with mild swelling bilaterally. The assessment was neck and back pain and bilateral knee pain.

A cervical MRI dated June 2, 2009, showed moderate cervical spondylosis resulting in multilevel right neuroforaminal narrowing. (Tr. 180). A lumbar spine MRI showed lumbar spondylosis, greatest at L4-5. (Tr. 181).

On June 23, 2009, claimant complained of low back pain for many years, with no mention of radicular pain. (Tr. 212). He was prescribed Lortab, Naproxen, and cyclobenzaprine. (Tr. 213). He was referred to LSU Shreveport neurosurgery.

Claimant complained of constant back pain with numbness and tingling in the upper back on February 6, 2010. (Tr. 206). He said he was unable to work. He was prescribed Voltaren, and instructed to stop smoking. (Tr. 207). He was again referred to LSU Shrevport neurosurgery.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical) dated October 29, 2009, Dr. Bhanushali checked that claimant could lift/carry up to 10 pounds occasionally. (Tr. 217). He further found that claimant could sit for 25 minutes and stand/walk for 30 minutes at one time without interruption. (Tr. 218). He determined that claimant could sit for three hours in an eight-hour workday with breaks, and stand/walk for one hour total. Claimant did not need a cane to ambulate.

Dr. Bhanushali indicated that claimant could reach frequently; handle, finger, and feel continuously, and push/pull occasionally. (Tr. 218-19). He found that claimant should be protected from exposure to unprotected heights because he felt dizzy. (Tr. 219). He also checked that claimant's back pain was affected by changes in temperature.

Additionally, Dr. Bhanushali determined that claimant would need to take unscheduled breaks eight to 10 times a day for 10 minutes due to pain. (Tr. 220). He found that claimant would sometimes need to miss work or leave early, at least once a week. He noted that Lortab caused drowsiness/sedation, but claimant was not currently on it. He concluded that "the pain in the back limits the [patient] from working to his full capacity for 8 hours and 5 days in a row."

**(4) Claimant's Administrative Hearing Testimony**. At the hearing on April 20, 2010, claimant was 34 years old. (Tr. 27). He had a ninth-grade education. He had last worked in April, 2009, as a grounds keeper for over one year. (Tr. 27-28).

Previously, claimant had worked as a stocker. (Tr. 28). He had also done maintenance and painting. He said that he had quit/been fired because he was lacking in performance. (Tr. 28-29). He reported that he had tried to lay fiber optics for a day and a half, but could not get out of bed the next day. (Tr. 34).

5

Regarding complaints, claimant reported that he had back problems with very bad pain. (Tr. 29). He stated that he had a ruptured disk, arthritis, and degenerative changes. (Tr. 30). He said that he could not afford medications. (Tr. 31).

Claimant testified that he was waiting for an appointment in Shreveport for further back studies. (Tr. 34). He stated that the doctor at UMC had encouraged him to get a cane. (Tr. 36).

As to activities, claimant testified that he bathed and dressed himself. (Tr. 32). He said that he drove about 10 miles a day and grocery shopped with his wife. (Tr. 35-36). He visited with people at his house. (Tr. 35).

Regarding restrictions, claimant reported that he had trouble lifting a gallon of milk. (Tr. 36). He said that he could sit and stand about 30 minutes. (Tr. 32). He said that he could walk about 100 yards from his house and back. (Tr. 33).

**(5) The ALJ's Findings**. Claimant argues that: (1) the ALJ applied an incorrect legal standard by using the Medical-Vocational Guidelines to deny his claim at Step 5 despite the presence of a significant non-exertional impairment; (2) the ALJ's conclusion that the occupational base of light, unskilled work was not affected by claimant's non-exertional impairment was not supported by any evidence; accordingly, the ALJ failed to meet his burden of proof at Step 5; (3) the

ALJ improperly refused to give any weight to the medical opinion of Dr. Bhanushali, failed to properly evaluate the opinion, and failed to re-contact the doctor for clarification of the opinion, and (4) the ALJ misstated the evidence in evaluating claimant's credibility, resulting in a credibility evaluation that was not supported by substantial evidence.  Because I find that the ALJ should have re-contacted claimant's treating physician for clarification, I recommend that this case be **REMANDED** for further proceedings.

Claimant argues that the ALJ erred in rejecting Dr. Bhanushali's opinion without re-contacting him for clarification as to why he considered claimant disabled, citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) and 20 C.F.R. § 1512(e)(1).  *Newton* states that if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).  (emphasis added).  *Id*. at 453.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton*, 209 F.3d at 455; *Leggett v.*

*Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id*. (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id*. Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.   *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237 (5th Cir. 1994).

Here, the ALJ stated that Dr. Bhanushali was not a treating physician. (Tr. 17). He noted that the medical records from claimant's "treating physicians" were

"silent" as with regard to claimant's work-related restrictions until Dr. Bhanushali's Medical Source Statement. (Tr. 18). Accordingly, the ALJ rejected Dr. Bhanushali's opinion and gave it no weight. Although claimant's attorney indicated that the Medical Source Statement was from his "treating physician," the record is unclear as to whether Dr. Bhanushali actually is a treating physician. (Tr. 37).

Recently, the Fifth Circuit addressed the issue of whether an ALJ improperly disregarded evidence from a claimant's treating physician without re-contacting him to obtain further documentation. *Jones v. Astrue*, — F.3d —, 2012 WL 3553622 (5th Cir. Aug. 20, 2012). There, as in this case, one of the claimant's physicians, Dr. Young, supplied a checklist indicating his opinion that claimant suffered from a variety of ailments, partially contradicting some of the ALJ's conclusions. The ALJ gave no weight to this doctor's two-page checklist, because "[t]here are no progress notes . . . and no other evidence to indicate whether Dr. Young is a treating source."

Citing 20 C.F.R. § 404.1512(e), the Fifth Circuit noted that the ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability and there is no other medical opinion evidence based on personal examination of the claimant. However, in *Jones*, the ALJ had

9

"hundreds of pages of records" from claimant's previous application and ninety-three pages of supplementary records from "seven different physicians" which conflicted with Dr. Young's report. That is not the case here, where the only records relating to claimant's back condition were from UMC, including Dr. Bhanushali's report.

    Here, the record is not clear as to whether Dr. Bhanushali is a treating physician. (Tr. 37). Additionally, while the available evidence from UMC shows that claimant has a neck and back condition which might be expected to cause pain, that evidence is inadequate to determine if there is a disability. (Tr. 180-81). Further, there are no other medical opinions based on personal examination or treatment of claimant which conflict with Dr. Bhanushali's Medical Source Statement.

    Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to re-contact claimant's treating physician for clarification or order a consultative examination regarding claimant's residual functional capacity. Claimant shall be afforded the opportunity to submit additional evidence, and to testify at a

supplemental hearing with vocational expert testimony, if the Administrative Law Judge deems it necessary after the RFC determination on remand.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME**

**AUTHORIZED BY FED. R. CIV. P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

September 6, 2012, Lafayette, Louisiana.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE